```
                    IN THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF KANSAS


MARC BLAKE,                     )
                                )
               Plaintiff,       )
                                )
vs.                             )      Case No. 07-1207-MLB
                                )
MICHAEL J. ASTRUE,              )
Commissioner of                 )
Social Security,                )
                                )
               Defendant.       )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II. History of case**

On February 15, 2007, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 14-25). Plaintiff alleged disability beginning March 31, 2004 (R. at 14). Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2009 (R. at 14, 16). At step one, the ALJ found

that plaintiff has not engaged in substantial gainful activity since March 31, 2004, the alleged onset date (R. at 16). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease, bilateral carpel tunnel syndrome (CTS), status post left hip fracture, sucrase isomaltase deficiency, hyperparathyroidism, osteoporosis, osteomalacia, seizure disorder, attention deficit hyperactivity disorder (ADHD), major depressive disorder, cognitive disorder not other specified(NOS), personality disorder NOS, and alcohol dependence in remission (R. at 16). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17). After determining plaintiff's RFC (R. at 18), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 23). At step five, the ALJ found that plaintiff could perform a significant number of jobs in the national economy (R. at 23-24). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24).

**III. Did the ALJ err in his analysis of the opinions of Dr. Hon, plaintiff's treating physician?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is

generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so. <u>Watkins</u>, 350 F.3d at 1301.

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional. <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004). In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight. <u>Soc. Sec. Rul.</u> 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2. However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.

Dr. Hon was plaintiff's treating psychiatrist. He saw plaintiff from April 19, 2004 through September 25, 2006 on 10

occasions (R. at 219-225, 459-476).  On October 16, 2005, Dr. Hon filled out a "Medical Source Statement-Mental" indicating that plaintiff was moderately limited in 4 categories, markedly limited in 8 categories, and extremely limited in 8 categories (R. at 393-394).

On July 22, 2004, Dr. Woltserdorf, a clinical and forensic neuropsychologist, saw the plaintiff after he was referred by Dr. Reddy.  Dr. Woltserdorf's letter is as follows:

> We examined Mr. Blake on 7-22-2004 and, simply put, he is malingering much, if not all of his problems. He has several classical malingered responses on tests. For example, he was able to learn and freely 12 out of 16 words across five trials but when we did cued recall at the end he could only remember 6. His MMPI is a classically malingered profile. I think he wants to be impaired for secondary gain. He was in special education as a youngster and his verbal IQ of 68 would support that, if true, but I don't think it is since he did so much better than a 68 patient would do on other language measures later in the day. He had a language quotient of 101 in the afternoon and someone with verbal retardation would not have done that. He simply is trying to manipulate his data and unable to do so in a genuine way.
>
> I simply see nothing wrong with Mr. Blake other than he is trying to look disabled when he is not.

(R. at 307).

Dr. Hon, subsequent to Dr. Woltserdorf's opinion letter, referenced in his treatment notes of Sept. 20, 2004, March 23, 2005, May 16, 2005, July 20, 2005 and Sept. 19, 2005 the opinion

8

of Dr. Woltserdorf that plaintiff was malingering, and stated that it was unclear how much plaintiff's current presentation might be fictitious, he (Dr. Hon) simply could not tell (R. at 220, 222, 460, 462, 465). On March 10, 2006, Dr. Hon stated in regards to the evaluation of malingering that "I can't tell how much of this might be partially fictitious and it seems overall fairly genuine" (R. at 467). On May 15, 2006, Dr. Hon again referenced the evaluation of malingering and stated: "it has been difficult for me to tell how much of this could fall into that category, but the more I have gotten to know him the less I think that is likely" (R. at 469).

A psychiatric review technique form was filled out by Dr. Blum. On October 12, 2004, Dr. Blum provided the following narrative regarding his findings:

> This claimant worked SGA through 03/31/04. He stopped due to alleged memory problems. The claimant has a history of treatment at Comcare. He apparently started there sometime in 2002. Our notes are from 2003. The claimant initially alleged psychotic and depressive symptoms and was treated for them. It is noteworthy that the bulk of the evidence for the hallucinations is by self-report. In addition he was working during portion of the time he was claiming hallucinations and depression. At some point there was a diagnosis of paranoid schizophrenia by Dr. Porter. But he apparently had only seen the claimant once and did not see him again. There is no evidence of the cluster of symptoms typical of paranoid schizophrenia. Moreover there has been a history of noncompliance with medication. From self-report there is

> evidence of depression and some paranoia. Dr. Steinshouer stated 08/22/03 that the claimant had some" pseudo psychotic" symptoms. She diagnosed MDD, severe, recurrent with psychosis and PD NOS. As of 8/12/03 hallucinations and were denied. After that the main problem shifted to memory and concentration problems. Dr. Ogden saw the claimant 01/05/04. The claimant presented with allegedly severe enough problems with memory, concentration and understanding that he could not provide a good history. At same time he stated he had had been working in maintenance at an apartment house. As of 03/08/04, he continued to claim memory problems, stating that he had forgotten to turn off water mains at the apartment. He denied hallucinations, paranoia. He claimed it that he had been told he may have a neurological disease. The possibility of the psychogenic component to his memory problems was raised. It does not appear that the claimant followed through with psychological treatment after May of 2003. The claimant's neurologists stated that there is "no neurological etiology for his memory symptoms". He speculated that these might be stress-related. An examination was conducted by Dr. Waltersdorf, a clinical and forensic neuropsychologist, 08/09/04. This psychologist stated that based on testing and examination the claimant was malingering. Despite the claimant's problems with memory, he and a third-party reported that he plays computer games, performs household and yard work, feeds his children as necessary, and helps them complete daily duties, shops three times a week. He is able to cook.  Overall, there is little objective evidence for reduced concentration, attention and memory. His alleged hallucinations and psychotic symptoms appear to have been in remission since the beginning of the year. Objectively his psychological symptoms are nonsevere.

(R. at 322-323).  Dr. Fantz reviewed the evidence and affirmed the opinions of Dr. Blum on May 3, 2005 (R. at 310).

The ALJ gave the following analysis to the opinions of Dr. Hon:

> As for the opinion evidence, the undersigned finds that the opinion of Dr. Hon as discussed previously and while thorough and useful, is not given controlling or substantial weight based on the evidence. In evaluating the assessment given by Dr. Hon, the undersigned considered testimony and reports of the claimant and documentary evidence from other treating and examining sources. **The undersigned found that Dr. Hon's assessment was not supported by any other medical sources including opinions of Dr. Woltserdorf who found the claimant malingering (Exhibit 8F) and of State Agency medical consultants who provided a Psychiatric Review Technique (PRTF) assessment as discussed previously in Finding 4.**
>
> Since Dr. Hon's opinion is not entitled to controlling weight, it must be analyzed to determine the appropriate weight that can be given to this opinion using the following factors for evaluating the weight of his opinion:
>
> (1) length of treatment relationship and frequency of examination
> (2) nature and extent of treating relationship. including treatment provided and kind of examinations or testing administered
> (3) degree to which the treating source opinion is supported by relevant evidence
> (4) consistency between the opinion and the record as a whole
> (5) whether the treating source is a specialist in the area upon which an opinion is rendered
> (6) other factors brought to the Administrative Law Judge's attention which tend to support or contradict the opinion (20 CFR 416.(27).

> While Dr. Hon is a psychiatrist, the undersigned finds from the evidence that he is not the primary treating source for claimant's physical impairments and not an exclusive treating or examining source for claimant's mental impairments. **From the evidence it appears that the claimant has exhibited moderate symptoms based on 10 GAF scores of 50 or more from February 2003 through September 2006, as discussed earlier, which are inconsistent with the number of extreme or marked restrictions set forth in Dr. Hon's Medical Source Statement-Mental of October 16, 2005 (Exhibit 17F). It is further found that Dr. Hon's opinion in regard to claimant's mental restrictions are inconsistent with his MMPI results as assessed and interpreted by Dr. Woltserdorf who concluded that the claimant was malingering much, if not all, of his problems as discussed earlier.**

(R. at 22-23, emphasis added).

The ALJ gave two reasons for discounting the opinions of Dr. Hon. First, the ALJ stated that plaintiff's GAF scores of 50 or more indicate moderate symptoms and are therefore inconsistent with Dr. Hon's findings of extreme and marked restrictions. A review of the treatment records from COMCARE show 12 findings that plaintiff had a GAF of 50 between August 11, 2003 through September 25, 2006 (R. at 220, 223, 226, 232, 233, 460, 462, 465, 467, 469, 472, 475-76). The GAF score of 50 was not only assigned by Dr. Hon, but also by Dr. Ogden (R. at 226) and Dr. Steinshouer (R. at 232). The treatment records also show one GAF score of 50-55, assigned to plaintiff on January 5, 2004 by Dr.

Ogden (R. at 228).[1]

Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. A claimant's impairment might lie solely with the social, rather than the occupational sphere. A GAF score of fifty or less, however, does suggest an inability to keep a job. For this reason, such a GAF score should not be ignored. Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).

The ALJ stated that plaintiff exhibits "moderate" symptoms based on GAF scores of 50 or more, which are inconsistent with marked and extreme limitations set forth by Dr. Hon. However, the treatment notes show 12 findings of a GAF score of 50, and only 1 finding of a GAF score of 50-55. According to the DSM-IV,

---

[1] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).
>
> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

a score of 50 represents serious, not moderate symptoms (moderate symptoms are represented by a GAF score of 51-60). A GAF score of 50 or less does suggest an inability to keep a job, which is not inconsistent with the opinions of Dr. Hon. There is no evidence in the record that GAF scores of 50 are inconsistent with the opinions of Dr. Hon. Given that the overwhelming majority of treatment notes indicate a GAF score of 50, and not 50 or more, the ALJ erred by asserting that plaintiff exhibits only moderate symptoms which are inconsistent with the restrictions set forth by Dr. Hon.

Second, the ALJ discounted Dr. Hon's opinions based on the evaluation by Dr. Woltersdorf, who found that plaintiff was malingering much, if not all of his problems. Dr. Woltersdorf based this finding on his examination of the plaintiff, MMPI test results, and IQ and language quotient testing. The ALJ also noted that Dr. Hon's opinions regarding plaintiff's limitations were not supported by any other treating or examining physician, including Dr. Woltserdorf and Dr. Blum, the state agency medical consultant. The record does not indicate that any treating, examining, or consulting physician expressly commented regarding Dr. Hon's opinions, and there is no evidence in the record from any other physician or psychologist that clearly supported Dr. Hon's opinion that plaintiff is markedly limited in 8 categories and extremely limited in 8 categories.

14

Plaintiff contends that the ALJ did not properly weigh the medical evidence. However, the court can neither reweigh the evidence nor substitute its judgment for that of the agency. White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

Conflicting medical evidence and a lack of evidence supporting the opinions of the treating physician could provide a reasonable basis for an ALJ to discount a treating physician's opinion. However, in this case, the ALJ clearly erred in his finding that plaintiff's GAF scores of 50 indicate only moderate symptoms which are inconsistent with the opinions of Dr. Hon. The court will not weigh, in the first instance, what relative weight should be accorded to the opinions of Dr. Hon, Dr. Woltersdorf, and Dr. Blum/Dr. Fantz after proper consideration is given to the significance of the GAF scores in the treatment notes. Therefore, this case shall be remanded in order for the ALJ to properly consider all of the medical evidence, including the significance of the GAF scores contained in the treatment notes.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on May 6, 2008.

                              s/John Thomas Reid
                              JOHN THOMAS REID
                              United States Magistrate Judge